```
              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF OREGON
STEPHEN A. LUCAS,              )
                               )    CV 06-3046-PA
              Plaintiff,       )
                               )
     v.                        )    ORDER
                               )
LAKE COUNTY,                   )
                               )
              Defendant.       )
```

**PANNER, J.**

Plaintiff Stephen A. Lucas brings this action against defendant Lake County, Oregon. Plaintiff claims that defendant terminated him because of his disability or perceived disability, violating the federal Americans with Disabilities Act (ADA), and Or. Rev. Stat. § 659A.112(1); defendant terminated him in retaliation for seeking workers' compensation benefits, violating Or. Rev. Stat. § 659A.040; defendant fraudulently induced him to begin employment; and defendant defamed him.

Defendant moves for summary judgment. I grant the motion.

## BACKGROUND

Plaintiff served in the U.S. Navy, where he gained experience in corrections. In 2003, plaintiff was living in

1 - ORDER

Bremerton, Washington, with his wife.  Plaintiff's parents lived in Lake County on a farm that they could no longer manage alone.  In October 2003, plaintiff applied for a position as a corrections officer with Lake County, planning to move there to help his parents.

In June 2004, Phillip McDonald, Lake County Sheriff, asked plaintiff to interview for a corrections officer position.  McDonald states that he told plaintiff he was "excited about [plaintiff's] credentials and the possibility of [plaintiff's] employment."  McDonald Aff. ¶ 4.

Plaintiff states that McDonald said he was seeking to fill a new position, "sergeant/jail manager" for the Lake County Jail.  Plaintiff states that McDonald told him he could start working immediately after the interview in Lakeview.

At his deposition, plaintiff testified that he understood that before defendant would hire him, he would have to be interviewed and undergo a background investigation and psychological evaluation.  Plaintiff also testified McDonald "basically" said that the interview would be "just a formality."  Morrow Aff., Ex. A, at 4.

McDonald states that during the job interview, he "made it clear to" plaintiff "that although I had plans to promote him to Sergeant/Jail Manager as soon as possible, I could not hire him at that position because of union disputes over hiring outside the Department.  I offered him a position as Corrections Officer at step 5 pay scale, commensurate with the Corrections Officer

2 - ORDER

position.  [Plaintiff] accepted employment on that basis." McDonald Aff. ¶ 5.

Plaintiff states that near the end of the job interview, McDonald told him that he would start as a correction officer and then be promoted to sergeant in a few weeks.  Plaintiff states that McDonald advised him to make friends with the other employees "until they calmed down, and then I'd have the job I'd been promised.  He did promote me just as he said he would." Lucas Decl. ¶ 2, at 3.  Plaintiff testified that he replied, "Okay," when McDonald told him that he would be hired as a corrections officer.

Plaintiff now states, "By the time [McDonald] told me about the change in entry positions, I had already made arrangements to move to Oregon and take care of my parents, and I was willing to do that to see if he kept his word."  Id.  Plaintiff states that "the offer of the position as the Jail Manager at the rank of sergeant was a material inducement to me to make that move, and I doubt that I would have made that choice just to be a corrections officer."  Id.

At his deposition, however, plaintiff testified that he had agreed to accept the corrections officer position after being told what the starting pay would be.  He also testified that after the interview, he told his wife that defendant had hired him as a corrections officer, and she agreed that he should accept the offer.

Plaintiff stated that he never disputed the amount of pay he

3 - ORDER

received from defendant.  In his complaint, plaintiff alleges that the correction officer position had an hourly wage of $12.15, while the sergeant/jail manager position had an hourly wage of $13.80.

McDonald states that plaintiff said during the job interview that despite a disability rating from the Veterans Administration, he was physically able to perform all the duties and responsibilities of a corrections officer and jail manager. Plaintiff did not ask for any accommodation, and stated that despite periodic discomfort in his feet, knees, neck, and back, he was able to function day-to-day.

Plaintiff was started work as a correction officer in July 2004.  Plaintiff was an at-will probationary employee.  As McDonald promised, plaintiff was promoted to sergeant at the beginning of September 2004.

Plaintiff described his relationship with McDonald as "wonderful."  Plaintiff said that McDonald praised him throughout his employment at the jail, and that McDonald had no conflicts with him.

McDonald states that he never perceived plaintiff as disabled and that plaintiff's performance showed that he was fully capable of performing the duties and responsibilities of his position without accommodation.  Plaintiff stated at his deposition that he had no evidence that McDonald perceived him as disabled.

Plaintiff filed a workers' compensation claim in late March

4 - ORDER

2005.  The claim was resolved in summer 2005, after plaintiff was terminated.

Plaintiff testified that McDonald never made negative comments about the workers' compensation claim, nor did he hear from others that McDonald had made any negative comments about the claim.  Plaintiff also testified that he didn't hear that anyone else was making negative comments about his workers' compensation claim.

McDonald told plaintiff in early 2005 that he planned to require that all jail employees be certified to use the Law Enforcement Data System (LEDS).  McDonald said that plaintiff should set an example by being the first employee to be LEDS-certified.  Plaintiff agreed.

Susan Adams was the employee responsible for overseeing the LEDS certification test.  On April 5, 2005, Adams gave plaintiff a booklet with test questions and a multiple-choice answer sheet, and told him he had sixty days to finish the test.

Plaintiff states that Adams "did not tell me there was another sheet hidden in back of the answer sheet to score the answers, and I didn't notice it and never knew it existed until almost a year after I was fired." Lucas Decl. ¶ 3, at 4.  Adams told plaintiff that the LEDS test was open-book, and that plaintiff was required to answer only about a third of the questions to qualify for inquiry-level LEDS certification.  Plaintiff folded his answer sheet to show only the top part.

Plaintiff states that the test was not difficult or

5 - ORDER

complicated.  From April 5 to April 28, 2005, plaintiff completed 53 out of the 160 questions in the inquiry section of the LEDS certification test.

Adams, the County employee in charge of the LEDS test, states that on April 26, 2005, she received reports from two corrections officers, Terry Hiatt and Stacey Rogers, who separately stated that "they had observed [plaintiff] holding up his answer sheet for the test up to the light, to review the correct answers on the carbon copy of the answer sheet, and then marking the answers.  When they made comments to him about the seeming impropriety of this, [plaintiff] made light of the situation.  [Plaintiff] was their supervisor at the time."  Adams Aff. ¶ 5.

Adams asked Hiatt and Rogers to put their observations in writing, which they did.  Adams wrote to Bob Morris, training manager for LEDS in Salem, on April 27, 2005, notifying Morris about the complaints against plaintiff and requesting guidance.  On April 28, 2005, Morris responded that based on the information about plaintiff from Adams, he determined that plaintiff had violated LEDS policies.  Adams gave Morris's letter to McDonald.

Plaintiff categorically denies ever holding up the answer sheet to copy the answers.  Plaintiff's attorney examined the answer sheet used by plaintiff, and states that some answers could be seen when the sheet was held up to a bright light.  However, no answers could be seen when the sheet was folded as plaintiff described.

6 - ORDER

McDonald terminated plaintiff on April 28, 2005. Plaintiff was a probationary employee. McDonald states that the "sole reason" for plaintiff's termination "was the report made by his subordinates regarding his improper conduct associated with the LEDS testing process." McDonald Aff. ¶ 18.

Plaintiff states that on April 28, 2005, McDonald asked to meet with plaintiff. McDonald then told plaintiff, "Steve, you're not working out. You're fired." Lucas Aff. ¶ 4, at 6. Plaintiff states that he stayed McDonald's office for ten minutes and tried to find out why he was being terminated, but McDonald would not give any further explanation.

Plaintiff cites an affidavit of Richard S. Gates, a former corrections deputy. Gates states that a few days after plaintiff was terminated, McDonald told Gates that plaintiff "had lied about having the SOP's [standard operating procedures] completed." Plaintiff states that he accurately reported to McDonald on his progress, and that he failed to finish an SOP on disability standards because he did not consider himself competent on that subject.

Plaintiff states that he did not learn about allegations that he had cheated on LEDS test until BOLI proceedings on his discrimination claim, nearly a year later.

### STANDARDS

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the

7 - ORDER

moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The court should resolve reasonable doubts about the existence of an issue of material fact against the moving party. Id. at 631. The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. Id. at 630-31.

## DISCUSSION

## I. Disability Discrimination Claims under State and Federal Law

### A. Failure to Show Disability or Perceived Disability

To prevail on his disability discrimination claims under ADA and state law, plaintiff must establish that he is a qualified individual with a disability. See Humphrey v. Memorial Hosps. Ass'n, 239 F.3d 1128, 1133 (9th Cir. 2001). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); see also Ammann v. Multnomah Athletic Club, 141 Or. App. 546, 551, 919 P.2d 504, 506 (1996) (similar standard under analogous Oregon statute).

Plaintiff has the burden of showing that he is a qualified

8 - ORDER

individual with a disability. <u>Weyer v. Twentieth Century Fox Film Corp.</u>, 198 F.3d 1104, 1108 (9th Cir. 2000). Here, I agree with defendant that plaintiff has failed to show a disputed issue of material of fact on this element of his claim.

A disability is "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A). "Major life activities" include "'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" <u>Cooper v. Neiman Marcus Group</u>, 125 F.3d 786, 790 (9th Cir. 1997) (quoting 29 C.F.R. § 1630.2(i) (emphasis omitted)). An impairment is substantially limiting if the person is

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same life activity.

29 C.F.R. § 1630.2(j)(1).

Plaintiff has not presented evidence that he was substantially limited by his medical condition, or that anyone perceived him as substantially limited.

### B. Failure to Show Termination Was Because of Disability

Plaintiff also has not presented evidence that he was terminated because of a disability or perceived disability.

Defendants cite the "same actor" defense, which raises an

9 - ORDER

inference against discrimination when the same person makes the decision both to hire and to terminate the plaintiff. See Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996) ("where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive"). For the inference to apply, the hiring and the firing should occur within a short period of time. Here, the inference applies, because only ten months elapsed between McDonald's decisions to hire and to terminate plaintiff.

Plaintiff has not presented sufficient evidence from which a reasonable jury could find that defendant terminated him because of either disability or perceived disability. Defendant is entitled to summary judgment on plaintiff's claims for disability discrimination under the ADA and state law.

## II. Workers' Compensation Retaliation Claim

Plaintiff has not pointed to any evidence, other than the timing of his termination, that defendant terminated him for filing a workers' compensation claim. Plaintiff testified that McDonald treated him well up to the day of the termination, and that neither McDonald nor anyone else commented unfavorably about his workers' compensation claim. I grant summary judgment on plaintiff's retaliation claim.

10 - ORDER

### III. Fraudulent Inducement Claim

Plaintiff claims that defendant violated Oregon Revised Statute § 659.815(1), which provides:

> No person, firm, company, corporation, or association of any kind employing labor, shall, either in person or through any agent, manager or other legal representatives, induce, influence, persuade or engage workers to change from one place to another in this state or bring workers of any class or calling into this state to work in any of the departments of labor by:
>
> (1) Any false or deceptive representation or false advertising, concerning the amount or character of the compensation to be paid for any work, or as to the existence or nonexistence of a strike, lockout or other labor troubles pending between employer or employees.

Plaintiff claims that defendant induced him to move from Bremerton, Washington, to Lake County by misrepresenting the nature of the job and salary. However, at his deposition, plaintiff testified that he understood by the end of his job interview that he would not be hired as a sergeant/jail manager, and that he would be paid initially as a corrections officer. Plaintiff also testified that he accepted the job offer knowing the nature of the position and the pay, and that he understood that he could not be hired by defendant until after the job interview and after he had undergone a psychological evaluation a background check. I agree with defendant that there is no material issue of disputed fact on plaintiff's deceptive inducement claim.

### IV. Defamation Claim

11 - ORDER

Plaintiff claims that defendant defamed him through the statements of its employee Susan Adams. Adams wrote to the state LEDS education manager, describing the two complaints of cheating against plaintiff. Plaintiff contends that the complaints were false and that he never cheated.

It is undisputed that Adams made the statements as part of her duties and responsibilities as defendant's LEDS administrator. I conclude that because the statements are absolutely privileged, they cannot support a defamation claim.

"Under Oregon law executive officers have an absolute privilege to publish defamatory material in the course of performing their executive duties." Fender v. City of Oregon City, 811 F. Supp. 554, 558 (D. Or. 1993) (citations omitted), aff'd, 37 F.3d 1505 (9th Cir. 1994) (table). Lower-level executive officials such as Adams are entitled to the absolute privilege. See Shearer v. Lambert, 274 Or. 449, 454, 547 P.2d 98, 101 (1976).

The alleged defamatory statements at issue here were made by an official acting within her assigned duties. Under these circumstances, it is not relevant whether the alleged statements were defamatory. As this court noted in Fender, "It makes no sense to grant [an official] immunity from defamation claims, but then withdraw that immunity if the holder makes a defamatory statement. Such an immunity would be purely illusory. Rather,

the statement must be considered in terms of its overall subject matter, within the larger context of the [official's] duties." 811 F. Supp. at 558. Because Adams, the person who repeated the allegedly defamatory statements, is absolutely immune under executive privilege, defendant cannot be vicariously liable for her statements. See <u>Eckleberry v. Kaiser Found. N. Hosp.</u>, 226 Or. 616, 628-29, 359 P.2d 1090, 1095-96 (1961).

## CONCLUSION

Defendant's motion for summary judgment (#14) is granted. Any pending motions are denied as moot.

IT IS SO ORDERED.

DATED this _1_ day of May, 2007.

/s/ Owen M. Panner<br>
OWEN M. PANNER<br>
U.S. District Judge

13 - ORDER